Smith *v.* Pettigrew.

MOSES P. SMITH, appellant,

*v.*

OLIVER PETTIGREW, respondent.

In 1861, under the directions of a will, A and B, the executors thereof, invested $4,000 in a mortgage, to pay the interest to C until C's son arrived at twenty-one, and then to pay the principal to him. The mortgage was taken in the name of both the executors. A borrowed moneys at various times afterwards of the mortgagor, on his own account, and, in September, 1875, credited the mortgagor, on the mortgage, with $1,000, on account of those borrowed moneys. In February, 1878, B ascertained these facts, and inquired of A in regard to them, but took no further steps. C's son attained his majority in October, 1878.—*Held*, that B was liable for the $1,000, A being insolvent; and that it was no ground of relief that the mortgage had, for convenience in collecting the interest, been left in A's hands, or that A's malfeasance had not been discovered until two years thereafter, and that A was said to have been then insolvent, or that A had voluntarily accounted alone in the orphans court, in 1875, for his administration of the fund, B having omitted to take the steps precautionary and protective which he might have taken in behalf of the trust estate in the premises.

On appeal from order of Essex orphans court.

*Mr. William B. Guild, jun.,* for appellant.

*Mr. F. A. Johnson,* for respondent.

THE ORDINARY.

David Jones, deceased, by his will, among other things, directed that $4,000 of his estate be invested by his executors (Samuel M. Bailey and Moses P. Smith), and the interest paid to his granddaughter, Mrs. Pettigrew, until her son Oliver should have become of age, when the fund was to be paid to him. The executors raised the money in 1861 from the sale of

the testator's real estate, and it was invested upon a purchase-money mortgage for the amount given to them as executors in the sale.

On October 4th, 1878, Oliver became of age. In September, 1875, Bailey borrowed money, in several loans, on his own account, from the mortgagor. The last loan was for about $500. On the day the last-mentioned money was obtained, he, in payment of his debt to the mortgagor for borrowed money and interest thereon, receipted on the bond for $1,000 of the principal. This was done at the request of the mortgagor, and it is not improbable that he lent Bailey the money on that day on the agreement that, in consideration of his doing so, he was to have the credit on the bond. Smith did not ascertain that the credit had been put on the bond until February, 1878. He then spoke to Bailey on the subject, and asked him where he had invested the money. Bailey refused to tell him, and said that it would be forthcoming when the time should come for paying it over to Oliver. Smith never took any action on the subject until Oliver became of age, and then only interested himself in assigning the mortgage to him. The orphans court, on petition of Oliver, ordered the executors to pay Oliver the $1,000, and interest and costs. From that order Smith appealed. He insists that he is not liable, inasmuch as the bond and mortgage were left in Bailey's hands, in order that he might collect the interest and pay it over to Mrs. Pettigrew, who lived in the same village (Millburn) in which he and the mortgagor resided, and he himself was not aware of the misconduct of Bailey in receipting for the $1,000 until over two years after it occurred; and, as he insists, Bailey was, when he became aware of it, insolvent, and ever since has so remained, and also seeing that Bailey, in 1875, accounted alone and as trustee in the Essex orphans court, for the trust fund and his administration thereof.

The bond and mortgage were, as before stated, given to both executors in 1861. They accounted jointly for the estate, and by their account as settled a balance of $7,394.55 was in their hands. Of this money, Bailey paid to Mrs. Pettigrew $3,394.55, pursuant to the directions of the will, and the $4,000 were then

invested on the purchase-money mortgage, as before mentioned. They were both, under the circumstances, responsible for the $4,000 (*Laroe* v. *Douglass, 2 Beas. 308*), and the fact that Bailey subsequently filed his account as trustee of the fund does not relieve Smith from liability. Bailey's relation to the fund had not been changed by any judicial proceeding, and Oliver was within the age of consent. Smith lived but a very short distance—a few minutes' ride by the railroad—from Millburn. He does not appear to have made any inquiry about the fund from 1861 until, in 1878, he learned that Bailey had receipted for $1,000 of it, and then it was at Oliver's request that he made inquiry of Bailey on the subject. Oliver requested him to ask Bailey how he had invested it, and he did so. When Bailey refused to tell him, he took no action whatever to compel an account.

It is the duty of one trustee to protect the trust estate from any misfeasance by his co-trustee, upon being made aware of the intended act, by obtaining an injunction against him ; and if the wrongful act has been already committed, to take measures, by suit or otherwise, to compel the restitution of the property and its application in the manner required by the trust. *Hill on Trustees *314; Perry on Trusts § 417; Laroe* v. *Douglass, 2 Beas. 308; Crane* v. *Hearn, 11 C. E. Gr. 378*. Smith could and ought to have proceeded against Bailey under the 117th and 118th sections of the orphans court act. It by no means appears that if he had taken the measures which he might have taken to compel Bailey to make restitution, he would not have been successful. Bailey was in good credit when Smith discovered that he had receipted for the $1,000 on the mortgage, and he continued to be so, and regarded himself as solvent, for some months afterwards. He filed a petition in bankruptcy in 1878, but it was not until six months after Smith learned that he had received the $1,000. Smith does not appear to have inspected the bond and mortgage, while they were in the hands of his co-executor, from 1861 to 1878, and, as before stated, he appears to have made no inquiry about them. The $1,000 were receipted for in 1875, and it was not until more than two years afterwards

that he learned of it, and then it was not by any inquiry, but by information received from Oliver. He never so much as notified the obligor in the bond that no payment of principal was to be made without his express consent, but trusted implicitly to Bailey. Under the circumstances, he must bear the consequences. There is no error in the order appealed from. It will be affirmed, with costs.